## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISON

| | | |
|---|---|---|
| **TYRONE YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Civil Action No. 5:23-00088** |
| | ) | |
| **D.L. YOUNG, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court is Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 45), filed on July 13, 2023. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to Defendants' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting his claims as they are challenged by the Defendants in moving to dismiss. (Document No. 52.) Following the granting of several extensions of time, Plaintiff filed his Responses in Opposition on December 4, 2023, and December 21, 1013. (Document Nos. 81 and 90.) Defendants filed their Replies on December 14, 2023, and January 4, 2024. (Document Nos. 86 and 95.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 45) should be granted.

## PROCEDURAL HISTORY

On February 6, 2023, Plaintiff, acting *pro se*,[1] filed his Complaint in this matter claiming

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer and therefore, they are construed

entitlement to relief pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 1.) Plaintiff names the following as Defendants: (1) Warden D.L. Young, FCI Beckley; (2) Warden Heckard, FCI Beckley; (3) B.L. Fain, Head of Medical at FCI Beckley; (4) Ms. Fox, Head of Medical at FCI Beckley; (5) Doctor Roger Edwards, FCI Beckley; (6) PA Joe Cooper, FCI Beckley; (7) Dr. Hodovan, FNP at FCI Beckley; (8) Nurse Law, FCI Beckley; (9) Nurse Tiley, FCI Beckley; (10) Nurse Thompson, FCI Beckley; (11) Counselor Burdette; (12) Ms. Staples, Unit Manager at FCI Beckley; (13) Mr. Harless, Case Manager at FCI Beckley; (14) Dr. Whited, Psychologist at FCI Beckley; (15) Ms. Stinten, Unit Manager at FCI Beckley; (16) Mr. Craddock, Case Manager at FCI Beckley; (17) Ales Shiflet, Pharmacist at FCI Beckley; and (18) Milam, Counselor at FCI Beckley. (<u>Id.</u>, pp. 1 – 5.) Plaintiff alleges that Defendants violated his Eighth Amendment rights by acting with deliberate indifference concerning his medical needs. (<u>Id.</u>, pp. 5 – 14.) Specifically, Plaintiff complains that Defendants were aware of his chest/lung pain, asthma, and shortness of breath but failed to provide with him appropriate treatment. (<u>Id.</u>) Plaintiff alleges that he notified Defendants of the foregoing complaints as early as September 8, 2021. (<u>Id.</u>) Plaintiff states that despite his numerous requests, Defendants would not provide him with a "rescue inhaler." (<u>Id.</u>) Plaintiff contends that Defendants Edwards, Hodovan, and Whited all refused Plaintiff's request for a "rescue inhaler." (<u>Id.</u>) Plaintiff alleges that on February 8, 2022, an EKG was performed due to his complaints of chest pain and such revealed a "suspected heart attack." (<u>Id.</u>) Plaintiff states that he was transported an outside hospital, and a subsequent EKG was "clear." (<u>Id.</u>) Plaintiff contends that the hospital conducted chest x-rays, which revealed "patch bilateral opacities" and a

---

liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

heart consultation was requested. (Id.) Plaintiff asserts that he was "admitted to the hospital and was given immediate antibiotics through an IV for a diagnosis of an 'unspecified bacterial pneumonia." (Id.) Plaintiff claims that his "heart echo" and "heart cath" were "clear." (Id.) Plaintiff states that "Raleigh General Hospital doctors ordered Plaintiff a 'rescue' inhaler on February 18, 2022." (Id.) Plaintiff alleges that "all medical personnel mentioned above knew that Plaintiff needed a 'rescue' inhaler, yet did nothing until the hospital ordered it." (Id.) Plaintiff notes that "upon coming back to the institution on 2/21/22, Dr. Edwards cosigned/agreed with the findings of the outside hospital." (Id.) As relief, Plaintiff requests monetary damages. (Id.)

By Order entered on February 7, 2023, the Court directed Plaintiff to either pay the filing and administrative fee totaling $402 or file an Application to Proceed *in Forma Pauperis* by March 8, 2023. (Document No. 3.) On February 15, 2023, Plaintiff filed his Application to Proceed *in Forma Pauperis*. (Document No. 4.) By Order entered on March 13, 2023, the undersigned granted Plaintiff's Application to Proceed *in Forma Pauperis* and directed the Clerk to issue process promptly upon receipt of Plaintiff's initial partial payment of the filing fee. (Document No. 5.) Plaintiff paid his partial payment of the filing fee on March 22, 2023, and the Clerk issued process the same day. (Document Nos. 8 and 9.)

On July 13, 2023, Defendants filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" and Memorandum in Support. (Document Nos. 45 and 49.) Defendants argue that Plaintiff's claims should be dismissed based on the following: (1) Plaintiff failed to exhaust his administrative remedies (Document No. 49, pp. 13 – 15); (2) Following Egbert, Plaintiff's claims are not cognizable under *Bivens* (Id., pp. 15 – 31); and (3) Defendants are entitled to qualified immunity (Id., pp. 31 – 35).

As Exhibits, Defendants attach the following: (1) The Declaration of Misty Shaw

3

(Document No. 45-1, pp. 2 – 3); (2) A copy of Plaintiff's "Inmate History - Adm-Rel" dated June 27, 2023 (Id., p. 5); (3) A copy of Plaintiff's Administrative Remedy Generalized Retrieval dated June 26, 2023 (Id., pp. 7 – 10); (4) A copy of an Order as entered in Schwartz v. Miller, Case No. 14-02013 (D.Az. June 16, 2013) (Id., pp. 12 – 19); (5) The Declaration of Jesse Pugh (Document No. 45-2, pp. 2 – 3); (6) A copy of Program Statement 6031.04, *Patient Care* (Id., pp. 5 – 62); (7) A copy of Plaintiff's Health Services Records (Document Nos. 51, 51-1, 51-2, 51-3, 51-4, 51-5, 51-6, 51-7, 51-8, 51-9); (8) A copy of records from Raleigh General Hospital (Document No. 45-2, pp. 65 – 78 and Document No. 45-3, pp. 1 – 45); and (9) A copy of Program Statement 6027.02, *Health Care Provider Credential Verification, Privileges, and Practice Agreement Program* (Document No. 45-3, pp. 47 - 67).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on July 14, 2023, advising him of the right to file a response to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgement." (Document No. 52.) On December 4, 2023, Plaintiff filed his first Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 81.) On December 14, 2023, Defendants filed their Reply. (Document No. 86.) On December 21, 2023, Plaintiff filed his second Response in Opposition to Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment." (Document No. 90.) On January 4, 2024, Defendants filed their Reply. (Document No. 95.) On January 16, 2024, Plaintiff filed his "Motion to Correct ECF # 81." (Document No. 97.) In support, Plaintiff contends that Document No. 81 was inappropriately filed as his Response in Opposition and Document No. 90 is his correct Response in Opposition. (Id.) By separate Order entered this day, the undersigned denied Plaintiff's above Motion.

## THE STANDARD

### Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction

may be raised at any time. <u>Lovern v. Edwards</u>, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. <u>See</u> <u>William v. United States</u>, 50 F.3d 299 (4th Cir. 1995).

### Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law. An issue of material fact is 'genuine' if the evidence offered is such that a reasonable jury might return a verdict for the non-moving movant." <u>Wai Man Tom v. Hospitality Ventures LLC</u>, 980 F.3d 1027, 1037 (4th Cir. 2020)(citations omitted.); <u>also see</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)(A "material fact" is a fact that could affect the outcome of the case); <u>CTB, Inc. v. Hog Slat, Inc.</u>, 954 F.3d 647, 658 (4th Cir. 2020)("A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict of the nonmoving party."); <u>FDIC v. Cashion</u>, 720 F.3d 169, 180 (4th Cir. 2013)(A "genuine issue" of material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor). "The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact." <u>Wai Man Tom</u>, 980 F.3d at 1037. The moving party may satisfy this burden by showing that the non-moving party has failed to prove an essential element of the non-moving party's case that the non-moving party will bear the burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(Summary judgment is required when a party fails to make a showing sufficient

to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim.). Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. See Celotex Corp., 477 U.S. at 325, 106 S.Ct. 2548; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986); also see Wai Man Tom, 980 F.3d at 1037(citation omitted)("[T]o survive the motion for summary judgment, [the non-moving party] may not rest on the allegations averred in his pleadings. Rather, the nonmoving party must demonstrate specific, material facts exist that give rise to a genuine issue.") Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson, 477 U.S. at 247-48, 106 S.Ct. 2505("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."); Perry v. Kappos, 2012 WL 2130908, * 3 (4th Cir. 2012)(quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)("At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action.") All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356; also see Sedar v. Reston Town Center Property, LLC, 988 F.3d 756, 763 (4th Cir. 2021)("The requirement to construe the facts, and all reasonable inferences therefrom, in the light most favorable to the non-moving party does not require [the court] to accept cherry-picked snippets of the testimony divorced from their context."). Additionally, the court is not allowed to make credibility determinations or weigh the evidence at the summary judgment stage. Stanton v. Elliott, 25 F.4th 227, 234 (4th Cir. 2022)(noting that the

disbelief in a non-moving party's ability to succeed on the merits is insufficient to grant summary judgment). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate. See Moss v. Parks Corp., 985 F.2d 736, 738 (4th Cir. 1993)(Summary judgment is proper where it is apparent from the record that "no reasonable jury could find for the nonmoving party.")

## DISCUSSION

"[F]ederal courts must take cognizance of the valid constitutional claims of prison inmates." Turner v. Safley, 482 U.S. 78, 84, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987). A Bivens action is a judicially created damages remedy which is designed to vindicate violations of constitutional rights by federal actors. See Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. at 395-97, 91 S.Ct. at 2004-05. A Bivens action is the federal counterpart of an action under 42 U.S.C. § 1983. An action for money damages may be brought against federal agents acting under the color of their authority for injuries caused by their unconstitutional conduct. Proof of causation between the official's conduct and the alleged injury is necessary for there to be liability. A plaintiff asserting a claim under Bivens must show the violation of a valid constitutional right by a person acting under color of federal law. The United States Supreme Court has held that an inmate may name a federal officer in an individual capacity as a defendant in alleging an Eighth Amendment constitutional violation pursuant to Bivens. See Wilson v. Seiter, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). However, Bivens claims are not actionable against the United States, federal agencies, or public officials acting in their official capacities. See FDIC v. Meyer, 510 U.S. 471, 475, 484-86, 114 S.Ct. 996, 127 L.Ed. 2d 308 (1994); Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991); Reinbold v. Evers, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).

8

In the instant case, Plaintiff contends that Defendants have violated his Eighth Amendment rights by acting with deliberate indifference concerning his need for a "rescue inhaler" from September 8, 2021 until February 18, 2022. Plaintiff contends that Defendants were notified of his chest/lung pain, asthma, and shortness of breath, but failed to provide him with a "rescue inhaler." Plaintiff states that he was eventually transported to an outside hospital to be evaluated for his complaints of chest pain, and a chest x-ray revealed "unspecified bacterial pneumonia." Plaintiff acknowledges that the hospital ordered a "rescue inhaler," which was then provided to Plaintiff by medical personnel at FCI Beckley. Plaintiff, however, alleges that Defendants' act of disregarding his need for a "rescue inhaler" resulted in Plaintiff developing the "unspecified bacterial pneumonia."

### A.    Failure to exhaust.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[2] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other

---

[2] 42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). Exhaustion of administrative remedies is also required when injunctive relief is requested. Goist v. U.S. Bureau of Prisons, 2002 WL 32079467, *4, fn.1 (D.S.C. Sep 25, 2002), aff'd, 54 Fed.Appx. 159 (4th Cir. 2003), cert. denied, 538 U.S. 1047, 123 S.Ct. 2111, 155 L.Ed.2d 1088 (2003). "[A] court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclose[es] judicial discretion." Ross v. Blake, 578 U.S. 632, 136 S.Ct. 1850, 1856-57, 195 L.Ed.2d 117 (2016)("[A] court may not excuse a failure to exhaust, even to take [special circumstances] into account."). But the plain language of the statute requires that only "available" administrative remedies be exhausted. Id. at 1855("A prisoner need not exhaust remedies if they are not 'available.'") In Ross v. Blake, the Supreme Court set forth three scenarios where the administrative process is considered "unavailable": (1) The administrative process "operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) The administrative process is so opaque that no ordinary prisoner can discern or navigate through the process; and (3) The "administrator thwart inmates from taking advantage of a grievance process through machination, misrepresentation or intimidation." Ross, 136 S.Ct. at 1859-60; also see Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise

an inference that inmate had exhausted his available administrative remedies.)

    If an inmate exhausts administrative remedies with respect to some, but not all, of the claims he raises in a Section 1983, <u>Bivens</u> or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. <u>See</u> <u>Jones v. Bock</u>, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. <u>See</u> <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in <u>Neal</u>, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process was to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. <u>Neal</u>, 267 F.3d at 123. In <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that he has exhausted his administrative remedies. <u>See</u> <u>Jones v. Bock</u>, <u>supra</u>; <u>Anderson v. XYZ Correctional Health Services</u>, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust

11

administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which he did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted)) The Court is not precluded, however, from considering at the outset whether an inmate has exhausted administrative remedies. The Fourth Circuit stated in Anderson, 470 F.3d at 683, as follows:

> [A]n inmate's failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant. That exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Although failure to exhaust available administrative remedies is an affirmative defense, it is a threshold issue that must be resolved before reaching the merits of the underlying claims for relief. Jones v. Bock, supra, 549 U.S. at 216, 127 S.Ct. at 921; Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Once the defendant has made a threshold showing of failure to exhaust, the burden of showing that the administrative remedies were unavailable falls to plaintiff. See Washington v. Rounds, 223 F.Supp.3d 452, 459 (D.Md. 2016)(citing Graham v. Gentry, 413 Fed.Appx. 660, 663 (4th Cir. 2011)). Whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel v. Hudson, 2017 WL 4004579, at * 3 (S.D.W.Va. 2017)(citing Drippe v. Tobelinski, 604 F.3d 778, 782 (3rd Cir. 2010)); Lee v. Willey, 789 F.3d 673, 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse v. Duncan, 741 Fed.Appx. 177, 178 (4th Cir. 2018)(citation omitted)("Judges may resolve factual disputes relevant to the exhaustion issue

without the participation of a jury.") If a plaintiff fails to exhaust his or her administrative remedies under the PLRA, then the defendant is entitled to judgment as a matter of law. See Legg v. Adkins, 2017 WL 72604, * 2 (S.D.W.Va. Feb. 23, 2017).

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, supra, 376 F.3d at 655(internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the

13

institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In his Complaint, Plaintiff indicates that he did present the facts related to his claim in the prisoner grievance procedure. (Document No. 1, p. 13.) Although Plaintiff states that he "exhausted [his] administrative remedies," Plaintiff further states that "exceptional circumstances" were preventing him from "exhausting all rights." (Id.) Plaintiff asserts that he filed his BP-8 and BP-9 on November 26, 2022, but he received no response or notice of an extension after the passage of 20 days. (Id.) Plaintiff states that on December 26, 2022, he "mailed a complaint to the Regional Office addressing that FCI Beckley had violated [his] due process because it had exceeded the timeframe allowed under program statement Code 542.14." (Id.) Plaintiff contends that he received no response from the Regional Office. (Id.) Plaintiff further alleges that he

requested a "status update to [his] BP-9 on 1/26/23, but still no response."[3] (Id.) Accordingly, Plaintiff concludes that the "full exhausted all administrative rights." (Id.)

In their Motion, Defendants argue that Plaintiff failed to exhaust his administrative remedies concerning his <u>Bivens</u> claim. (Document No. 45 and Document No. 49, pp. 13 – 15.) Although Defendants acknowledges that Plaintiff filed 28 administrative remedies during his incarceration, Defendants note that "only six relate to Plaintiff's medical care, and none relate to the claims asserted in Plaintiff's Complaint." (Id., p. 14.) Finally, Defendants argues that "it is clear that the administrative remedy process was made available to Plaintiff, as evidenced by Plaintiff's twenty-eight administrative remedy submissions, including filings at all three levels." (Id., pp. 14 – 15.)

In support, Defendants submit the Declaration of Ms. Destiny Spearen, a Paralegal for the Consolidated Legal Center at FCI Beckley. (Document No. 45-1, pp. 2 – 3.) Ms. Spearen declares that in her position she has access to SENTRY, the Bureau of Prisons' online system containing, among other things, information about inmates' administrative remedy filings. (Id., p. 2.) Ms. Spearen explains that she also has access to information regarding inmates in the BOP's custody. (Id.) Specifically, Ms. Spearen states as follows in her Declaration (Id., pp. 2 - 3.):

* * *

5.    Plaintiff's allegations arise from Plaintiff's medical care while incarcerated at FCI Beckley.

6.    The BOP has established an Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, through which an inmate may seek formal review of issues or complaints relating to confinement.

7.    A review of Plaintiff's record reveals that he has not exhausted his

---

[3] Plaintiff cites "see exhibit" regarding the alleged letter sent on January 26, 2023. (Document No. 1, p. 13.) The undersigned has reviewed the exhibits attached to Plaintiff's Complaint, and no such exhibit was attached.

administrative remedies.

8.    While incarcerated with the BOP, Plaintiff filed or attempted to file twenty-eight administrative remedies. Of those twenty-eight remedies, only six relate to Plaintiff's medical care, and none relate to the claims asserted in Plaintiff's Complaint. Three of the six remedies relate to a grievance Plaintiff had while designated at FCI McDowell, not FCI Beckley (1049779-F1, 1049779-R1, and 1049779-A1); one was filed at the institutional level, rejected, not appealed to the Regional or to Central Office (1142043-F1); and two were filed after the commencement of this action, and were also rejected and not appealed to Central Office (1152874-R1 and 1153309-R1).

\* \* \*

(Id., p. 3.) Ms. Spearen attached a copy of Plaintiff's Administrative Remedy Generalized Retrieval. (Id., pp. 7 – 10.)

In his first Response in Opposition, Plaintiff argues that the administrative remedy process was unavailable after November 2022. (Document No. 81, pp. 1 – 2.) Plaintiff first explains that Defendants are in possession of Remedy # 1142043-F1 that would "set forth the foundation and blueprint that exhaustion did in fact occur and was unavailable after November 2022." (Id., p. 1.) Next, Plaintiff alleges that the administrative remedy process was unavailable because Defendants were "consistently unwilling and unable to provide him with necessary grievance and relief he sought." (Id.) Plaintiff indicates that his rejected grievance was "unfixable" because the reason for rejection was "unknowable so that no ordinary inmate can make sense of what it demands." (Id., pp. 1 – 2.) Plaintiff states that he requested assistance from the Warden regarding his rejected grievance, but "the warden's office redirected him to his handbook and was unwilling to further assist him." (Id.) Plaintiff indicates that the refiled in BP-9, but he received "no reply." (Id., p. 1.) Plaintiff, therefore, contends that he had "no choice but to proceed directly to the Court because he felt as if his mail is jeopardized and the administrative remedy process is unavailable." (Id.) Third, Plaintiff notes that he submitted numerous "electronic cop-outs" with the Warden,

16

Associate Warden, and Medical Departments at FCI Beckley advising them of his complaints. (Id.) Finally, Plaintiff contends that he felt intimidated to file administrative remedies because "plaintiff has had his cell shaken down on multiple occasions just for asking for administrative remedies.[4] (Id., p. 2.)

In Reply, Defendants continue to argue that Plaintiff failed to exhaust his available administrative remedies. (Document No. 86, p. 2.) First, Defendants note they do not have a copy of Remedy ID No. 1142043-F1 that allegedly contains a "foundation and blueprint that exhaustion did in fact occur." (Id.) Defendants explain that Remedy ID No. 1142043-F1 was rejected and the BOP does not retain copies of rejected remedies because such are returned to the inmate. (Id.) Next, Defendants argue that "[c]opouts or electronic (email) requests by inmates do not substitute for filing administrative remedies." (Id.) Defendants further note that "Plaintiff concedes he was directed to the unit team and handbook for reference and direction on how to file remedies and amend remedies that are rejected." (Id.) Defendants state that even though Plaintiff alleged that his rejected remedy was "unfixable," Plaintiff merely concluded it was "unfixable" because he refused to reduce the remedy to a single continuous page and resubmit the remedy. (Id.) Defendants again note that Plaintiff has submitted 28 remedies, which makes "clear the administrative remedy process was not only available to him, but that he was successful in utilizing the procedure." (Id., pp. 2 – 3.)

In his second Response, Plaintiff argues that he did exhaust all his administrative remedies. (Document No. 90, pp. 5 - 6.) Plaintiff indicates that he submitted a remedy to the Central Office, "but did not receive a final decision from the Central Office." (Id., p. 5.) Plaintiff argues that

---

[4] Although Plaintiff states that he felt intimidated, there is no allegation or indication that this alleged intimidate prevented Plaintiff from pursuing the administrative remedy process.

"[u]nless Defendants are saying that Plaintiff's BP-11 was approved, then according to BOP Policy, if a reply is not received within the allotted timeframe, then the inmate should assume the submitted administrate remedy has been denied." (Id., p. 6.) In support, Plaintiff cites Section 542.18 (Exhibit 14). (Document No. 90-5.) Plaintiff further argues that he "filed a Tort Claim, which was denied." (Document No. 90, p. 6.) As Exhibits, Plaintiff attaches "Examples of Plaintiff's Administrative Remedy Attempts": (1) A copy of email communications between Plaintiff and Health Services dated May 19, 2022, regarding Plaintiff's request for breathing treatments (Document No. 90-6, p. 2); (2) A copy of email communications between Plaintiff and Health Services dated June 1, 2022 and June 2, 2022, regarding Plaintiff's complaint that he had received inadequate medical care leading to pneumonia and requesting that his "sick calls to be accepted through email"[5] (Id., p. 3.); (3) A copy of an email between Plaintiff and AW Programs dated June 14, 2022, wherein Plaintiff states that he is filing four administrative remedies and does want any issues with Counselor Milam or retaliation (Id., p. 4); (4) A copy of an email from Plaintiff to Case Management Coordinator O'Dell dated June 22, 2022, requesting verification that his five administrative were submitted (Id., p. 5); (5) A copy of an email from Plaintiff to AW Hall dated June 22, 2022, stating that he gave five administrative remedies to Case Management Coordinator O'Dell for submission to AW Hall (Id., p. 6); (6) A copy of an email from Plaintiff to Health Services Administrator Fain complaining that it had been six days since PA Cooper ordered Plaintiff medication for a sore throat and Plaintiff was going to file an administrative remedy concerning the delay in providing the medication (Id., p. 7); (7) A copy of an email from Plaintiff to the Warden entitled "Complaint/BP-8" dated November 3, 2022, stating that he had submitted

---

[5] Plaintiff further notified Health Services that he would be "filing a Complaint shortly in reference to this matter." (Document No. 90-6, p. 3.)

his "complaint to Unit Manager Ms. Stinten" and "in resolution of such claim, [Plaintiff] requested a sleep study be conducted, carpel tunnel splints, video footage from 9/8/21, and fifteen million dollars in damages" (Id., p. 8); (8) A copy of an email from Plaintiff to Administrative Clerk Massy dated November 10, 2022, requesting the status of his BP-9 that he "turned in on yesterday" (Id., p. 9); (9) A copy of an email from Plaintiff to Administrative Clerk Massy dated November 14, 2022, stating that he had not received a receipt for Remedy ID No. 1126913-F1 mailed on October 12, 2022 to the Regional Office (Id., p. 10); (10) A copy of an email from Plaintiff to the Warden dated November 23, 2022, stating Plaintiff received his rejection notice regarding Remedy ID No. 1142043-F1, complaining that the "rejection remarks" were missing Plaintiff's sleep study request, and inquiring how to file a grievance that is three pages instead of one (Id., p. 11); (11) A copy of an email response from the Warden to Plaintiff dated November 28, 2022, advising Plaintiff to read the "A&O Handbook" and to "be specific to one topic and list the remedy action your are seeking" when filing an administrative remedy (Id., p. 12); (12) A copy of an email from Plaintiff to Administrative Clerk Massy dated December 23, 2022, stating that he sent an email on "11/14/22 to check the status of an administrative remedy [he] mailed off to the regional office that [he has] failed to receive a receipt about" (Id., pp. 13 and 14); and (13) A copy of a letter addressed to the attention of the Regional Office dated December 26, 2022, stating that Plaintiff received a rejection notice from FCI Beckley regarding a BP-9, he resubmitted the BP-9 on 11/26/22, and he has yet to receive a response[6] (Id., p. 15).

In Reply, Defendants again argue that Plaintiff failed to exhaust his available administrative remedies. (Document No. 95, pp. 2 – 8.) First, Defendants again note that "Plaintiff

_____

[6] Plaintiff further states that "[t]his letter is in relation to the 'rejection notice,' violation of 542.18, and 'filing' a tort claim." (Document No. 90-6, p. 15.)

19

alleges that he attempted to exhaust his administrative remedies per Remedy # 1142043-F1 that 'sets forth the 'foundation and blueprint that exhaustion did in fact 'occur' and was unavailable after November 18, 2022, concerning 'other medical matters/financial compensation,' was rejected." (Id., p. 3.) Thus, Defendants note that Plaintiff acknowledges that he first attempted on November 2, 2022 to exhaust his administrative remedies concerning the allegations presented in his Complaint. (Id., p. 6.) Defendants note that Plaintiff admits receiving a rejection notice as to Remedy ID No. 1142043-F1 on November 26, 2022. (Id.) Defendants, however, state that the only indication that Plaintiff attempted to resubmit Remedy ID No. 1142043 is Plaintiff's self-serving letter purportedly sent to the Regional Office on December 26, 2022, alleging that he had resubmitted his BP-9 to the Regional Office on November 26, 2022." (Id.) Defendants, however, argue that other than "Plaintiff's own dating of this document, the letter bears no time stamp, nor is it recorded in the administrative remedy generalize retrieval." (Id.) Defendants contends that Plaintiff's self-serving claims are not sufficient to overcome the presumption of regularity afforded to government documents. (Id.) Even assuming Plaintiff fully pursued Remedy ID No. 1142043 to the Central Office level, Defendants contend this would not have resulted in proper exhaustion because Plaintiff's remedy was untimely. (Id.) Defendants note that pursuant to 28 C.F.R. § 542.14 "[t]he deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred . . .." (Id., p. 7.) Defendants argue that the "exhibit offered by Plaintiff demonstrates that he did not attempt to file an administrative remedy until November 2022 regarding the claims in the complaint – more than eight (8) months after the February 2022 hospitalization." (Id., p. 8.)

Based upon a review of the record, the undersigned finds that Defendants have met their

20

burden proving that Plaintiff failed to exhaust his available administrative remedies prior to filing his Complaint. As stated above, whether an administrative remedy has been exhausted for purposes of the PLRA "is a question of law to be determined by the judge." Creel, 2017 WL 4004579, at * 3; Lee, 789 F.3d at 678 (6th Cir. 2015)(finding disputed questions of fact are resolved by the Court); also see Woodhouse, 741 Fed.Appx. at 178 ("Judges may resolve factual disputes relevant to the exhaustion issue without the participation of a jury.") In his Response, Plaintiff first concludes that he fully exhausted the administrative remedy process. (Document Nos. 81 and 90.) Such bare and conclusory assertions without producing a scintilla of evidence is insufficient to create a genuine dispute of material fact. See Silling v. Erwin, 881 F.Supp. 236, 237 (S.D.W.Va. 1995)(a party must offer more than bare allegations or conclusory statements to survive a motion for summary judgment). Second, Plaintiff appears to argue that he exhausted his administrative remedies by submitting "copouts" and filing an administrative tort claim. (See Document Nos. 81, 90, 90-6, p. 15, and 90-7.) An inmate's submission of "copouts" clearly does not comply with the established administrative process and does not result in exhaustion. Although Plaintiff filed an administrative tort claim (Tort Claim No. TRT-MXR-2023-04042), the exhaustion requirements concerning the administrative process for a FTCA and Bivens action differ.[7] Thus, the filing of an administrative

---

[7] The administrative process which inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1 - 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the inmate must first submit an administrative claim including a claim for money damages in a sum certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. Id., § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, Id., §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. Id., § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

tort claim does not result in exhaust of Plaintiff's claim under <u>Bivens</u>. <u>See</u> <u>Jiminez v. United States</u>, 2013 WL 1455267, *5 (S.D.N.Y. Mar. 25, 2013) ("[T]he exhaustion requirements under the FTCA are different from those required for a *Bivens* action."); <u>Smith v. United States</u>, 2011 WL 4591971, *4 (E.D. Ky. Sept. 30, 2011)("In other words, the FTCA and *Bivens* each have their own exhaustion procedures, and Smith has a duty to fully exhaust the administrative remedies required by the two different claims."); <u>Fulwylie v. Waters</u>, 2009 WL 3063016, *5 (N.D.W. Va. Sept. 22, 2009)("The exhaustion requirement for a *Bivens* claim is separate and distinct from the exhaustion requirements under the Federal Tort Claims Act...."); <u>Tolliver v. Edgefield Correctional Institution</u>, 2006 WL 1391447, *4 (D.S.C. May 16, 2006) ("While Plaintiff's filings indicate he may have exhausted the BOP grievance procedure, which is a prerequisite to filing a *Bivens* action, exhaustion of administrative remedies for an action under the FTCA is vastly different.").

Third, Plaintiff alleges that he exhausted his claim via Remedy ID No. 1142043 even though Plaintiff alleges the administrative remedy process was unavailable after November 2022. The undersigned notes that Plaintiff offers contradictory statements regarding the Warden's alleged failure to respond to Plaintiff's BP-9 concerning Remedy ID No. 1142043. In his Complaint, Plaintiff indicates that he never received a response to his "initial BP-8 and 9 [that] were filed on 11/26/22." (Document No. 1, p. 13.) In his Reponses, however, Plaintiff indicates that his BP-9 was rejected. (Document Nos. 81 and 90.) Plaintiff further offers contradictory statements regarding the rejected BP-9. (<u>Id.</u>) Plaintiff first contends that his rejected BP-9 was "unfixable" because the reason for rejection was "unknowable so that no ordinary inmate can make sense of what it demands."[8] (Document No. 81.) Plaintiff, therefore, concluded he had no other

---

[8] The record does not support Plaintiff's conclusion that his BP-9 was "unfixable" or that the Warden failed to explain the rejection notice. The record reveals that Plaintiff's BP-9 was rejected

choice but to pursue his claim in this Court. (Id.) Plaintiff then contends that he resubmitted his BP-9 on November 26, 2022,[9] and then to the Regional Office on December 26, 2022 when he failed to receive a Response concerning the resubmitted BP-9.[10] (Document No. 81 and Document No. 90-6, p. 13.) Although the Administrative Remedy Generalized Retrieval confirms that Plaintiff filed a BP-9 on November 18, 2022 (Remedy ID No. 1142043-F1), the Administrative Remedy Generalized Retrieval is completely void of any indication that the BP-9 was resubmitted on November 26, 2022. As an Exhibit, Plaintiff attaches a copy of a letter dated December 26, 2022 to the attention of the "Regional Office" entitled "BP-9/Tort claim." (Document No. 90-6, p. 15.) Besides Plaintiff's self-serving statement, there is no official record or time stamp verifying that this document was actually sent by Plaintiff on December 26, 2022, or received by the

---

due to Plaintiff exceeding the page limit for the BP-9. The Warden clearly responded to Plaintiff's email regarding how to correct the BP-9. (Document No. 90-6, p. 12.) On November 23, 2022, Plaintiff sent the Warden a "Request to Staff" inquiring how to file a remedy if it is in excess of one page. (Document No. 90-6, p. 12.) Concerning the rejection of Remedy ID No. 1142043-F1, the record reveals the Warden responded to Plaintiff's "Request to Staff" notifying Plaintiff that he should (1) refer to the "A&O Handbook and (2) "be specific to one topic and list the remedy action you are seeking."

[9] A review of Plaintiff's Responses in conjunction with his Exhibits indicates the following: (1) Plaintiff received a Rejection Notice regarding Remedy ID No. 1142043-F1 on or before November 23, 2022; (2) Plaintiff sent an email communication to the Warden on November 23, 2022, complaining about the rejection and requesting the Warden to "direct [Plaintiff] in the right direction or put [Plaintiff] on the call out to discuss the matter further;" and (3) In an email communication dated November 28, 2022, the Warden responded to Plaintiff's request for direction on resubmitting his BP-9 regarding Remedy ID No. 1142043. Thus, the undersigned finds Plaintiff's claim that he resubmitted his BP-9 regarding Remedy ID No. 1142043 on November 26, 2022 suspicious at best.

[10] If the inmate does not receive a response at the expiration of the time limit at any stage of the process, the inmate may move to the next stage of the grievance process. *See Veloz v. New York*, 339 F.Supp.2d 505, 516 (S.D.N.Y. 2004)(finding that inmate should not be excused from exhausting where the administrative remedy procedure offers available alternative means of exhausting).

23

Regional Office. Plaintiff then insinuates in his second Response that after not receiving a response from the Regional Office within the allotted timeframe, Plaintiff submitted his remedy to the Central Office wherein he again did not receive a response. Again, the Administrative Remedy Generalized Retrieval is completely void of any indication that such a remedy was submitted to the Central Office. Additionally, Plaintiff wholly fails to offer any documents or factual details to corroborate this claim concerning submission to the Central Office. Such bare assertions without producing a scintilla of evidence is insufficient to create a genuine dispute of material fact. See Silling v. Erwin, 881 F.Supp. 236, 237 (S.D.W.Va. 1995)(a party must offer more than bare allegations or conclusory statements to survive a motion for summary judgment). It is well established that a bare assertion that is unsupported by any detail will not satisfy a prisoner-plaintiff's burden of showing that remedies were unavailable. Mendez v. Breckon, 2021 WL 4268890, * 3 (W.D.Va. Sept. 20, 2021)(citation omitted); Creel, 2017 WL 4004579, at * 4 – 6 ("Unsubstantiated and conclusory assertions by an inmate that prison officials thwarted pursuit of the administrative process are insufficient to excuse failure to exhaust."); Tosado v. Gilbert, 2020 WL 6487685, * 3 – 4 (W.D.Va. Nov. 4, 2020)(stating that "numerous courts within the Fourth Circuit and elsewhere have held that 'unsubstantiated and conclusory assertions by prisoner-plaintiffs that prison grievances were hindered, without providing any details regarding the date the alleged grievances were submitted or to whom they were submitted, fails to create a genuine issue of material fact sufficient to withstand summary judgment"). Besides one unreliable Exhibit (Document No. 90-6, p. 15) and Plaintiff's self-serving conclusory statements that he appealed Remedy ID No. 1142043 to the Regional and Central Offices, Plaintiff wholly fails to provide adequate detail to support his claim. Specifically, Plaintiff fails to state on what dates he mailed his alleged appeals to the Regional and Central Offices and what addresses were used for the

mailing. Again, the Administrative Remedy Generalized Retrieval is completely void of any indication that such remedies were submitted to the Regional and Central Offices. As argued by Defendants, there is a "presumption of regularity[that] attaches to the actions of government agencies," including the accuracy of prison records, such that "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." United States Postal Service v. Gregory, 534 U.S. 1, 10, 122 S.Ct. 431, 151 L.Ed.2d 323 (2001); United States v. Chemical Foundation, 272 U.S. 1, 14-15, 47 S.Ct. 1, 71 L.Ed. 131 (1926)); also see Almy v. Sebelius, 679 F.3d 297, 309 (4th Cir. 2012), Mira-Avila v. Barr, 756 Fed.Appx. 329, 331 (4th Cir. 2019). The BOP's records are subject to the presumption of regularity, the Regional and Central Offices have no record of receiving Plaintiff's alleged remedies, and Plaintiff has not submitted competent evidence to overcome this presumption. See Sexton v. United States, 2021 WL 1199834, * 4 (S.D.W.Va. March 29, 2021)(J. Volk)("Absent clear evidence that the BOP received the claim, the Court must presume that the agents of the United States 'properly discharged their official duties.'") Accordingly, the undersigned cannot find that the administrative remedy process was unavailable or that Plaintiff exhausted Remedy ID No. 1142043.

Notwithstanding the foregoing, the undersigned finds that Plaintiff's alleged efforts would not have resulted in proper exhaustion because such would have been untimely. Even assuming Plaintiff pursued his claim in Remedy ID No. 1142043 as alleged, such would not have properly exhausted his administrative remedies because it would have been untimely. See Pendleton v. Ames, 2023 WL 2541967, * 5 (S.D.W.Va. March 16, 2023)(finding that plaintiff's grievance that was rejected as untimely, could not have properly exhausted his administrative remedies). Not only must a prisoner exhaust his administrative remedies, but he must also do so properly." Wells v. Parkersburg Work Release Ctr. et al., 2016 WL 696680, at *3 (S.D. W. Va. Jan. 19, 2016).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id.(citing Woodford v. Ngo, 548 U.S. 81, 90–91, 126 S.Ct. 2378, 165 L.Ed.2d. 368 (2006)). As stated above, an inmate must submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests within 20 days after the circumstances occurred. See 28 C.F.R. § 542.14(a) and (c)(4). It is undisputed that Plaintiff's underlying claim occurred between September 8, 2021 until February 18, 2022, yet Plaintiff acknowledges he did not attempt to exhaust his administrative remedies until approximately nine months later (November 2022). There is no allegation or indication that the administrative process was unavailable to Plaintiff prior to November 2022.[11] Furthermore, between October 2021 until May 2023, SENTRY records reveal that Plaintiff filed 12 remedies, two of which were filed on December 8, 2021 and February 11, 2022. (Document No. 45-1, pp. 7 – 10.) Thus, there is no allegation or indication that Plaintiff could not have properly exhausted his administrative remedies prior to November 2022. The undersigned further finds that the record does not support a finding that the administrative remedy process was unavailable after November 2022. The SENTRY records reveal that from November 18, 2022 until May 25, 2023,[12] Plaintiff filed eight administrative remedies (Remedy ID Nos. 1142043-F1, 1152874-R1, 1153309-R1, 1161482-F1, 1161485-F1, 1161488-F1, 1161490-F1 and 1161488-R1). (Document No. 45-1, pp. 9 – 10.) Plaintiff's ability to file a grievance during this time period

---

[11] On June 1, 2022, Plaintiff notified Health Services that he would be "filing a Complaint shortly in reference to this matter." (Document No. 90-6, p. 3.) Accordingly, Plaintiff was clearly aware of this claim prior to November 2022.

[12] The Administrative Remedy Generalized Retrieval was printed on June 26, 2023.

exhibits that the administrative remedy process was available to Plaintiff. See <u>Ferguson v. Clarke</u>, 2016 WL 398852, * 6 (W.D.Va. Jan. 6, 2016)(inmate's allegation that the administrative process was unavailable was belied by evidence that inmate submitted other grievances within the same period); <u>Al Mujahidin v. Harouff</u>, 2013 WL 4500446, * 7 (D.S.C. Aug. 21, 2013)(finding that inmate could not avoid summary judgment by simply asserting an unsupported allegation that his grievances were not processed or destroyed, in light of documentary evidence showing that other grievances were processed). Viewing the evidence in a light most favorable to Plaintiff, the undersigned cannot find that Plaintiff exhausted his *available* administrative remedies prior to initiating the above action. Accordingly, the undersigned respectfully recommends that Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 45) be granted and Plaintiff's Complaint be dismissed in view of his failure to exhaust his administrative remedies. The undersigned finds it unnecessary to consider the other reasons that Defendants have submitted for dismissal of Plaintiff's claim.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court District Court **GRANT** Defendants' "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (Document No. 45), and remove this matter from the docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Frank W. Volk. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days (filing of objections) and three (3) days (if received by mail) from the date of filing of this Findings

and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, District Judge Volk and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: January 16, 2024.

Omar J. Aboulhosn
United States Magistrate Judge